The STATE ex rel. DURKIN et al.

v.

MAHONING COUNTY BOARD OF ELECTIONS et al.

[*Cite as State ex rel. Durkin v. Mahoning Cty. Bd. of Elections* (1996), 115 Ohio App.3d 180.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 96 CA 178.

Decided Nov. 6, 1996.

*Lou A. D'Apolito* and *David A. D'Apolito; McTigue & Brooks* and *Donald J. McTigue; Dennis Haines,* for relators.

*James A. Philomena,* Mahoning County Prosecuting Attorney, and *Michele G. Cerni,* Assistant Prosecuting Attorney; *Gary L. Van Brocklin,* for respondents.

---

*Per Curiam.*

On August 16, 1996, incumbent Judge Michael A. Gerchak withdrew as the Democratic Party candidate for judge of the Mahoning County Court of Common Pleas. The executive committee of the Mahoning County Democratic Party met on August 20, 1996, and selected relator,[1] John M. Durkin, to fill the vacancy. The chairman and secretary of the committee certified relator as the person selected to fill the vacancy. This certification and relator's acceptance were timely filed with respondent, the Mahoning County Board of Elections.

On August 26, 1996, respondent Jack N. Mavrikis ("Mavrikis"), a member of the central committee of the Mahoning County Democratic Party, filed a protest over relator's status as his party's candidate. The board of elections held a hearing on Mavrikis's protest on September 23, 1996. Mavrikis argued, *inter alia,* that the executive committee that selected relator had not been properly elected as required by R.C. 3517.03. The board of elections voted to sustain the protest, and invalidated relator's candidacy. On that same day, the board of elections also voted to print relator's name on the ballots pending resolution of any resultant litigation.

On September 25, 1996, relator filed a petition for a writ of mandamus in this court, asking this court to order respondents to accept his candidacy. On September 27, 1996, Mavrikis filed a motion pursuant to Civ.R. 19 to intervene. On September 30, 1996, this court granted Mavrikis's motion, and issued an alternative writ to retain relator's name on the ballots and to seal the results of the November 5, 1996 election pending further order of this court. The matter is now before us on cross-motions for summary judgment. Relator essentially

---

1. Also a relator is John Olson, a member of the Mahoning County Democratic Party Executive Committee. For the purposes of this opinion, "relator" shall mean Durkin.

argues that (1) the board of elections does not have the authority to declare an internal organ of a county political party incompetent to select a candidate for public office; (2) the board of elections must accept any candidate proffered by an executive committee that, from all outward appearances, functions as de facto officers of the Democratic Party; and (3) R.C. 3517.03 is unconstitutional.

In response, the board of elections and Mavrikis (collectively, "respondents") contend that (1) the board of elections is vested with the authority to investigate any violations of R.C. Title 35, and it is empowered to invalidate the candidacy of any candidate who has not fully complied with the election laws; (2) R.C. 3517.03 is not unconstitutional because it is a necessary function to ensure democratic selection of candidates; and (3) relator has adequate legal remedies, such as an appeal to the court of common pleas or an action for declaratory judgment.

■ In order for a writ of mandamus to issue, the relator must demonstrate that (1) there is no plain and adequate remedy in the ordinary course of law, (2) the respondent is under a clear duty to perform some act or acts, and (3) the relator has a clear right to the relief prayed for. *State ex rel. Foster v. Jenkins* (Apr. 24, 1996), Columbiana App. No. 95–CO–66, unreported, 1996 WL 204278.

"Ordinarily[,] a decision of a board of elections is final and will be reviewed [in an original action for writ of mandamus] only to ascertain whether it is tainted with fraud or corruption or resulted from an abuse of discretion or a clear disregard of the applicable law." *State ex rel. Nichols v. Vinton Cty. Bd. of Elections* (1985), 20 Ohio St.3d 1, 2, 20 OBR 75, 76, 484 N.E.2d 690, 691.

■ In the case at bar, there is no adequate remedy at law. Because the election was only six weeks after the day the board of elections ruled, it is extremely questionable whether relator could have appealed to the court of common pleas and effectuated a seasonable decision. The Supreme Court of Ohio has relaxed the "ordinary course of law" doctrine in election cases where the relator seeks to have his name placed on the ballot, and is inclined to entertain an original action despite the theoretical possibility of a protracted administrative appeal. *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6–7, 18 O.O.3d 128, 128–129, 412 N.E.2d 393, 393–395. Time is of the essence in such cases, and the normal appellate process is simply too slow to provide potential candidates with adequate relief. Accordingly, we will address the merits of relator's petition for mandamus.

■ Here, the board of elections is under a clear duty to accept relator's nomination as provided by the Mahoning County Democratic Party, and relator has established a clear right to relief. R.C. 3513.05 requires the board to accept a declaration of candidacy despite a protest unless the candidate (1) does not meet the residency requirements, or (2) "has not fully complied with *this chapter*

[R.C. Chapter 3513]." (Emphasis added). R.C. Chapter 3513 concerns itself with the technical requirements that a candidate must fulfill in order to be accepted as a candidate, such as filing a declaration of candidacy on time, paying pertinent filing fees, and producing a petition with the requisite number of signatures. See R.C. 3513.05. This section, however, does not grant the board of elections the authority to review potential violations of other chapters in R.C. Title 35.

The legislature could have granted such wide-ranging power, and has done so in another context. R.C. 3513.041, which governs protests filed against a write-in candidate, provides that the board of elections must determine whether the candidate has "fully complied with the requirements of *Title XXXV of the Revised Code*." (Emphasis added). But, when reviewing the candidacy under R.C. 3513.05, the board is confined to the provisions of R.C. Chapter 3513, and cannot look further into R.C. Title 35. While we do not perceive why R.C. 3513.05 is so limited, restructuring its language to permit an exhaustive examination of compliance with the entirety of R.C. Title 35 is for the General Assembly.

In this case, the Mahoning County Board of Elections relied upon the fact that the executive committee was not properly elected, in violation of R.C. 3517.03, in reaching its decision to invalidate relator's candidacy. However, a protest raised under R.C. 3513.05 is not an appropriate vehicle to remedy this particular problem. It is true that the Revised Code requires the executive committee to be elected by the central committee, but the election requirement appears in R.C. Chapter 3517, not in R.C. Chapter 3513. The board of elections is not authorized to investigate alleged violations of R.C. Chapter 3517 when resolving a protest challenging the validity of a declaration of candidacy under R.C. 3513.05.

Respondents also contend that R.C. 3513.31(C), which lies within R.C. Chapter 3513, and hence within the reach of R.C. 3513.05, confers upon a board of elections the power to reject a candidate on the basis that the executive committee which selected him has not been properly elected. We disagree.

R.C. 3513.31(C) allows a major political party of a county to replace a nominated candidate who withdraws from a race. It is presumed that the central committee of the party will have the responsibility of filling any vacancies; however, the executive committee may act in behalf of the central committee "if so authorized." It is our belief that this phrase limited the board of elections to a review of whether the Mahoning County Democratic Party Constitution, or some other resolution of the central committee, empowered the executive committee to act in its behalf, not whether the executive committee is legally constituted. Article XIV of the Mahoning County Democratic Party Constitution establishes an executive committee to carry out all central committee functions when the central committee is not in session. Since there is no contention that the central

committee was in session at the pertinent times in this case, the executive committee was properly authorized to act. Accordingly, under the protest provisions of R.C. 3513.05, the executive committee was permitted to act as it did under R.C. 3513.31(C).

■ The board of elections' decision to invalidate relator's candidacy was based on the application of statutes that are not applicable in resolving Mavrikis's protest; its actions are, therefore, contrary to law and constitute an abuse of discretion. The proper means to challenge relator's selection as the Democratic Party's candidate on these grounds would have been an action in quo warranto or for declaratory judgment in the court of common pleas to invalidate the executive committee's legal existence, and, therefore, its actions.

For the foregoing reasons, both relators are entitled to a writ of mandamus.

Two other issues raised by relator are (1) whether the actions by the executive committee are valid because it is a de facto committee, and (2) whether R.C. 3517.03, which requires that the central committee elect the executive committee, is unconstitutional. Although not necessary for the disposition of this original action, we nevertheless take this opportunity to address them briefly.

■ First, relator's de facto argument is without merit. The executive committee, as the group formed by Article XIV of the Mahoning County Democratic Party Constitution, must be charged with actual or constructive notice as to whether it was properly formed. It is disingenuous to assert that the committee, if it is in fact improperly created, can claim de facto status regarding *its* exercise of authority. A de facto argument would be relevant in cases where (1) the committee was acting without actual authority, disclaims its actions during that period, and a third party claims that the committee was a de facto body; or (2) the committee was formed in accordance with the party's then-existing constitution, as was the case in *State ex rel. Humker v. Hummel* (1944), 143 Ohio St. 604, 28 O.O. 496, 56 N.E.2d 167. This is not the situation in this case. The Chairman of the Mahoning County Democratic Party improperly appointed the executive committee *before* the party constitution was amended to grant him the power to do so.

■ Secondly, relator is incorrect in claiming that R.C. 3517.03 is unconstitutional as violative of freedom of association rights. Relator correctly contends that *Eu v. San Francisco Cty. Democratic Cent. Commt.* (1989), 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271, *Tashjian v. Republican Party of Conn.* (1986), 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514, *Democratic Party of the United States v. Wisconsin* (1981), 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82, and other authority hold that a state may not meddle unnecessarily in the internal mechanics of political parties. However, relator in this case contends that the single

requirement that the central committee *elect* the executive committee in order to act in its behalf is unconstitutional. What this ignores is that nowhere in R.C. 3517.03 are further requirements placed upon a party. A party is left to determine by what means and what form its internal elections will take. In this case, the central committee properly adopted a constitutional provision that created and authorized an executive committee to act in its place when the central committee is not in session.[2]

We fail to see what onerous burden or grand herniation results from a simple requirement that political parties, as arms of and an integral element in the democratic process, allow for *some form* of an election by the central committee of the executive committee before the actions of the executive committee in behalf of the central committee are deemed valid.[3] Certainly, in a system founded in the concept of free elections and public access, the choice to defend Star Chamber-styled politics, with its Tammany Hall implications, is unsupportable. R.C. 3517.03 merely attempts to leave the power in political parties with the members, and to avoid the eventual and natural public perception, however inaccurate, of the party as an autocratic kingdom, with its propensity for favoritism. The state's clear and compelling interest in maintaining party *member* control of the party's *leadership* by requiring some form of democratic election is reasonable. It is up to the party to determine precisely how the central committee should elect the executive committee. Although we do not exercise any judicial notice chemistry to determine how many registered voters in either major political party are totally unfamiliar with the internal workings of the county organization of the party of their choice, we are confident that if such registered voters were precisely informed, the great majority of them would not stand up and cheer these methods of selection that are so inconsistent with well-accepted fixtures of democratic principles. The insistence by our federal government upon a free and open democratic election process in foreign nations would appear to be hypocritical if ignored within our own boundaries.

This court would suggest that the goal of any political party is for a free, open, accessible, and fair party structure. A writ issues in this case because the board of elections improperly utilized R.C. 3513.05 to review an alleged violation of R.C.

---

2. This factor further illustrates the point that although the executive committee was authorized to act in this manner by its 1994 constitution, which was adopted about a month after the party's newly elected chair appointed the present executive committee in derogation of the party's prior constitutional provisions, any problems with the mechanics of the committee's composition, due to the present statutory language, would have been better addressed in a declaratory judgment or quo warranto action.

3. There is no question that the *method* of election and the formalities that would attach to such an exercise have been left to the local parties to determine. R.C. 3517.03 merely requires an "election," which, of course, can come in many forms.

3517.03, which it is not permitted to do. This writ should not be construed as validating the actions in handpicking the executive committee. Had this action been brought properly as a declaratory judgment or in quo warranto, the result in this case very likely would have been different. The procedures that have led to this case should be examined and modified to prevent any further problems.

The writ of mandamus shall issue. It is the order of this court that respondent, the Mahoning County Board of Elections, shall (1) certify relator, John M. Durkin, as the candidate of the Mahoning County Democratic Party for Judge of the Mahoning County Court of Common Pleas, (2) retain relator's name on the ballot for this office at the general election conducted on November 5, 1996, (3) count all votes cast for relator in that election, and (4) certify the results according to law.

Pursuant to our judgment entry of November 4, 1996, the portion of this order regarding counting the votes and certifying the results have been stayed pending further order of this court or the Supreme Court of Ohio.

*Writ granted.*

FORD, P.J., JOSEPH E. MAHONEY and NADER, JJ., concur.

DONALD R. FORD, JOSEPH E. MAHONEY and ROBERT A. NADER, JJ., of the Eleventh Appellate District, sitting by assignment.